UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
  THE TRAVELERS INSURANCE
  COMPANY,

                       Plaintiff,

        - against -


  HARLEYSVILLE INSURANCE
  COMPANY OF NEW YORK,

                       Defendant.
---------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

22-cv-6032 (BMC)

**COGAN**, District Judge.

    This case is before me on plaintiff's motion for summary judgment. It is an insurance coverage dispute in which plaintiff Travelers contends that defendant Harleysville owes a duty to defend and indemnify Travelers' insured, E-J Electric Installation Company ("E-J"), against a personal injury claim upon which E-J has been sued in state court. Based on the admissible evidence before me, I conclude that Travelers is entitled to judgment as a matter of law on the duty to defend and indemnify, and its motion is granted.

## BACKGROUND

    The City of New York (the "City") had hired E-J to repair an intersection roadway where plaintiff was injured, and E-J had subcontracted out some of the work to Harleysville's insured, Citywide Paving, Inc. ("Citywide"). The state court plaintiff, Hernandez, sued the City and E-J, and E-J impleaded Citywide. That case is ongoing.

    Harleysville does not dispute that under certain circumstances, E-J is covered as an additional insured under Citywide's policy. Nor does it dispute that if such circumstances occur,

Citywide's Harleysville policy becomes primary and E-J's Travelers policy becomes secondary. Harleysville argues, however, that Hernandez's injury was caused by E-J, not Citywide, which, it contends, would relieve Harleysville of any coverage obligation. At least, Harleysville argues, the determination of whether Hernandez's claim triggers coverage under Citywide's policy raises a question of fact as to whether E-J or Citywide was at fault, and, thus, this action must await a liability determination in Hernandez's state court case.

## DISCUSSION

The issue turns on the application of the language of one of the endorsements in the Harleysville policy to principles of New York law. The endorsement, which the parties refer to as the "Completed Operations Endorsement," addresses what happens when, as here, an injury occurs after the named insured (Citywide) has completed its work. In that instance, the endorsement covers an additional insured like E-J. However, after defining anyone for whom Citywide is performing work as an "additional insured," the endorsement adds the qualification: "any person or organization . . . is an additional insured only with respect to liability arising out of 'your [Citywide's] work' performed for that insured …." Did Hernandez's underlying accident "aris[e] out of" Citywide's work for E-J? The question must be approached from two perspectives – defense and indemnification.

### I. Duty to Defend

To determine whether Harleysville has a duty to defend E-J, Travelers asserts that I need not – and, under New York law, should not – look any further than the face of Hernandez's complaint and the scope of work documents between E-J and Citywide. As to the former, Hernandez's complaint alleges that pursuant to a contract with the City, E-J had repaired "the street and crosswalk located at Loring Avenue and its intersection with Edert Lane" in Brooklyn,

and that on January 6, 2021, Hernandez "was riding his bicycle at the aforementioned roadway, street and crosswalk when his bicycle came into contact with a portion of ripped-up, depressed, rough, uneven, unlevel and unpaved roadway that had yet to be repaved or repaired, causing him to be thrown to the ground." As to the latter, pursuant to a Master Services Agreement, E-J issued a work order to Citywide to "complete the following roadway restoration as soon as possible: … Location: Intersection of Loring Ave[.] @ Eldert Ln."

Citywide issued two invoices to E-J for the work it did at the intersection. The first, dated September 25, 2020, shows a completion date of September 23, 2020. The second, dated January 13, 2021, shows a completion date of January 4, 2021 (two days before Hernandez's accident). Case closed, says Travelers – Citywide's work matches up perfectly with Hernandez's complaint and Citywide's invoices to E-J.

But Harleysville uses additional evidence to reach a contrary conclusion. It first establishes through E-J's records that E-J did its own excavation work at the site ("more extensive and more involved," according to Harleysville) both before and after Citywide's September invoice. It then points to Hernandez's notice of claim and his Municipal Law § 50-H hearing testimony which drill further down into where in the intersection the accident occurred. Hernandez annexed to his claim a marked photograph to show precisely where he fell and testified at his § 50-H hearing consistent with the marked photograph. Using Google Maps, Harleysville compares Hernandez's marked photograph with an affidavit from Citywide's principal averring that the work reflected on Harleysville's second invoice did not cover that area. Because E-J did its own excavation work in the area Hernandez marked prior to Citywide's second invoice, Harleysville argues that it was E-J that caused the condition that

3

derailed Hernandez, or at least there is a factual issue as to whether the injury "arose" out of Citywide's work.

The issue is easily resolved as to Harleysville's duty to defend E-J – it must. Harleysville itself acknowledges the liberal standard for triggering defense coverage, stating in its brief that

> [a]n insurer's duty to defend is derived from the allegations of the Complaint and the terms of the policy. Ogden Corp. v Travelers Indem. Co., 924 F. 2d 39, 41 (2d Cir. 1991). "An insurer may refuse to defend only if it can be concluded as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy." Charter Oak Ins. Co. v. Zurich Am. Ins. Co., 462 F. Supp. 3d 317, 323 (S.D.N.Y. 2020) (quoting CGS Indus., Inc. v. Charter Oak Ins. Co., 720 F. 3d 71, 82 (2d Cir. 2013)).

The test, in other words, is whether the allegations in the complaint "suggest a reasonable possibility of coverage." Automobile Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 137, 818 N.Y.S.2d 176, 179 (2006) (cleaned up). See also BP Air Conditioning Corp. v. One Beacon Ins. Group, 8 N.Y.3d 708, 714, 840 N.Y.S.2d 302, 305 (2007). There is a reasonable possibility here.

Although Harleysville makes a desultory effort to claim that it was E-J, not Citywide, that created the hazard at the intersection in question, that is clearly a factual issue that does not need to await the determination of the Hernandez action. Even if the court in that action determines that E-J created the hazard, the very existence of the question based upon Hernandez's complaint and the scope of work documents between E-J and Citywide is sufficient to require Harleysville to supply E-J with a defense.

Harleysville relies heavily on the fact that Citywide is only named in E-J's third-party complaint, not in Hernandez's original complaint. Harleysville's argument is imprecise, but it

4

appears to rest on the general rule that the duty to defend arises "[i]f [the] complaint contains any facts or allegations which bring the claim even potentially within the protection purchased … ." Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 15 N.Y.3d 34, 37, 904 N.Y.S.2d 338, 340 (2010) (cleaned up). To the extent Harleysville is arguing that the absence of Citywide from Hernandez's complaint precludes coverage *ipso facto*, its argument fails for two reasons.

First, as Harleysville seems to recognize itself by relying on extraneous evidence, ascertaining the duty to defend is not confined to the face of the complaint, although that is often the sole or primary source. But the inquiry can also include whether the insurer "has knowledge of facts which potentially bring the claim within the policy's indemnity coverage." Fitzpatrick v. Am. Honda Motor, 78 N.Y.2d 61, 66-67, 571 N.Y.S.2d 672, 674-75 (1991) (citations omitted). Here, Traveler's tendering of the defense and indemnification on behalf of E-J four separate times was more than sufficient to alert Harleysville that its insured, Citywide, may well have been responsible for the hazard.

More importantly, Harleysville's argument puts the cart before the horse. By applying the limiting language ("arising out of") that follows the definition of additional insured, Harleysville would deprive E-J of its additional insured status. But the starting point under the Completed Operations Endorsement is that E-J is an additional insured, and the possible, subsequent emergence of facts that would activate the limiting language is insufficient to deprive E-J of that status for purposes of entitling it to a defense. Once E-J's status as an additional insured is recognized, it has the same right to a defense as would Citywide.

This is demonstrated by the First Department's decision in City of New York v. Travelers Property Casualty Company of America, 196 A.D.3d 401, 151 N.Y.S.3d (1st Dep't 2021).

There, the City, as an additional insured, sued Travelers under a policy that Travelers had issued to a City contractor, Bartlett Tree ("Bartlett"). The policy provided coverage to the City for any liability arising out of Bartlett's operations under its contract with Bartlett, except that a "person or organization does not qualify as an additional insured with respect to independent acts or omissions of such person or organization." The City-Bartlett contract required Bartlett to prune trees in Central Park, and the plaintiff in the underlying action was injured by a falling tree branch. Rejecting Travelers' argument that it had no duty to defend the City because Bartlett was not a named party to the action and the complaint did not plead any negligence on Bartlett's part, the Appellate Division affirmed summary judgment in favor of the City:

> The allegations in the underlying complaint, supported by the tree-service subcontract and business records memorializing Bartlett's work on the park's trees before the accident, demonstrate that there is a reasonable possibility that the City will recover under the policy's additional insured provision, which affords coverage premised on the City's vicarious liability for the acts or omissions of the named insured, Bartlett; therefore defendant is required to defend the City in the action. *That the City might ultimately be found liable solely for its own independent negligent acts and/or omissions, which would not be covered under the additional insured provision, does not negate defendant's duty to defend it.*

Id. at 402, 151 N.Y.S.3d at 385 (citations omitted) (emphasis added).

I recognize there are distinctions between City v. Travelers and the instant case. The policy language in City v. Travelers is somewhat different; the qualification language there removed additional insured coverage "with respect to independent acts or omissions" of the additional insured, whereas in the instant policy, the structure is reversed – the named insured must have been found negligent before additional insured coverage is triggered. But for purposes of the duty to defend, they are functionally the same: each policy activates the duty to defend despite uncertainty as to whether the qualifying language will ultimately relieve the named insured of liability. Each requires a defense of the additional insured because "there is a

reasonable possibility," id., that the additional insured will prevail in the underlying litigation. E-J is therefore entitled to a defense.

## II. Duty to Indemnify

Determining whether Harleysville also has a duty to indemnify E-J is more complicated. Travelers properly states the legal standard. First, unlike the duty to defend, the duty to indemnify is not based on the pleadings, but on "the actual basis for the insured's liability to a third person." Servidone Constr. Corp. v. Security Ins. Co. of Hartford, 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 142 (1985). Travelers is also correct that in some cases, "it is possible to determine whether an injury arose out of an insured's operations without reaching a determination on liability… ." Wausau Underwriters Ins. Co. v. Old Republic Gen. Ins. Co., 122 F. Supp. 3d 44, 52 (S.D.N.Y. 2015). The question is whether this is such a case.

Harleysville contends that Hernandez's notice of claim and § 50-H testimony raises an issue whether Citywide was in any way negligent in creating or contributing to the condition that allegedly injured Hernandez. Harleysville argues that a comparison of the photo annexed to Hernandez's proof of claim showing the marked area of the accident to a Google Earth screenshot downloaded by Harley's counsel, combined with the work records of both E-J and Citywide, shows that E-J, not Citywide, last paved over the area, although they both worked on the precise spot where Hernandez took his tumble.

In reply, Travelers recognizes that these documents certainly make its case less clean than portrayed in its moving papers. It argues, however, that the Court should not consider them because Harleysville never produced them in discovery, and their introduction now would constitute summary judgment (or, more properly, the avoidance of summary judgment) by ambush. Travelers questions the authenticity of the § 50-H transcript and, in any event, notes

7

that Hernandez was not shown the photograph submitted with his proof of claim (or any other photograph) during his testimony.  As to whether the Google Earth screenshot is reliable and admissible, Travelers complains that the decision of Harleysville's counsel to disclose his work product only in opposition to summary judgment left Travelers with no opportunity to do its own discovery and research to rebut that evidence.

Harleysville, for its part, does not deny that these documents fall within the scope of Rule 26(a) nor that Travelers' discovery requests were broad enough to encompass them.  It asserts, however, that it did not have the documents at the time of its Rule 26 initial disclosures, nor at the time it responded to Travelers' discovery requests.  It only obtained them when Harleysville's counsel – as he admitted during a conference – "started to think about my op[position] for the [summary judgment motion] … so I tried to find out what ways can I get some additional information."

The timeline here is important. At the initial status conference held in this case on November 28, 2022, Harleysville made clear its defense that "the accident of plaintiff Hernandez did not arise out of the work performed by Harleysville's insured as required to trigger coverage under the additional insured endorsement."  At no point did Harleysville raise or suggest that this case's schedule should depend on the Hernandez case.  In fact, the parties jointly proposed a discovery plan, which the Court adopted, that ordered the close of discovery on February 20, 2023, a much faster timeline than the two to four years that serious accident cases typically take in state court.

Then, Travelers filed its request for a premotion conference on its proposed motion for summary judgment on February 27, 2023, one week after discovery closed.  Harleysville responded on March 3, 2023, arguing that Travelers should not be permitted to move for

8

summary judgment until, at least, depositions were taken in the Hernandez action so that fault could be determined as between E-J and Citywide. As Harleysville counsel put it:

> The defendants in the [Hernandez] case contend the accident is not the result of Citywide's work. Importantly, defendant Citywide contends that [Hernandez's] accident occurred in a location that showed evidence of a subsequent repair not performed by them. Something that would certainly need to be clarified during depositions [in the Hernandez action].

At the premotion conference, counsel explained that he had not been the lawyer for Harleysville who was present at the initial status conference in this case and thus he did not know – despite the discovery scheduling order – that he was already supposed to have taken any discovery that he needed. He reiterated his position from his letter that summary judgment practice should not occur until, at least, more discovery had been taken in the Hernandez action. I rejected that argument because Harleysville had taken no action to obtain any discovery from Travelers, despite specific dates in the discovery order in this case requiring it to do so:

> We had a conference in this case, we set a schedule. I told you I was only going to move the schedule for extraordinary circumstances. Discovery has closed and you didn't ask me for anything until we got this letter requesting a motion for summary judgment. To the extent that you think you need discovery from the state court action, you should have taken it. I never knew that. If you had said to me at the initial status conference, Judge, of course, this schedule is subject to the schedule in the state court proceeding, I would have said to you then, no, it is not. If you need discovery in the state court proceeding, take it now during the period of discovery that we have in this case. If you need to serve subpoenas on parties in that case to get them, go ahead and serve them. You didn't do any of that. You just kind of sat there until a couple of weeks after discovery was closed. So, no, you're not going to get any more discovery.

Thus, it is clear what happened: despite a discovery schedule mutually agreed to by the parties, Harleysville's counsel took no action to develop its main defense until after discovery had closed and he had been fully apprised of Traveler's plan to move for summary judgment. Travelers developed the case with an eye towards moving for summary judgment and then

9

moved based on the record – with no indication that Harleysville would introduce unseen evidence to which it had to respond. Moreover, that evidence (a June 2021 transcript and a Google Earth screenshot) could have been obtained by Harleysville at any time during the discovery period.

Harleysville asserts that it did not intentionally seek to "sandbag" Travelers, but whether it was intentional sandbagging or negligent sandbagging, the effect on Travelers' motion and the case if I were to consider the Hernandez documents is the same. Under these circumstances, both Rule 37(c)(1) and the cases applying it strongly weigh in favor precluding consideration of these documents. See Haas v. Delaware & Hudson Ry. Co., 282 F. App'x 84, 86 (2d Cir. 2008); Joshi v. Walmart Inc., No. 14-cv-248, 2016 WL 11472115, at *4 (E.D.N.Y. Aug. 16, 2016); Garbinski v. Nationwide Mut. Ins. Co., No. 10-cv-1991, 2012 WL 3027853, at *3 (E.D.N.Y. July 24, 2012); Gunawan v. Sake Sushi Rest., No. 09-cv-5018, 2011 WL 3841420, at *4 n.1 (E.D.N.Y. Aug. 26, 2011).

Once those documents are excluded from consideration, Travelers easily has demonstrated a *prima facie* case for indemnification and Harleysville has nothing to rebut it. The undisputed record shows that Hernandez fell at a spot where Citywide had performed work. Even if E-J also worked on that location, that would not eliminate E-J's status as an additional insured by the terms of the Completed Operations Endorsement.

Finally, consideration of the Hernandez proof of claim and testimony would not require a different resolution. Harleysville interprets the "arising out of" language as requiring negligence on its part. The New York case law suggests a much broader meaning – if the claim against the additional insured is "connected with" the named insured's work, then indemnification to the

10

additional insured is required regardless of whether E-J was found negligent and regardless of whether Citywide was not.  See Regal, 15 N.Y.3d at 38, 904 N.Y.S.2d at 341.

## CONCLUSION

Travelers' motion for summary judgment is GRANTED. It is directed to submit a proposed form of declaratory judgment within 7 days of the docketing of this decision and order.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       November 14, 2023

11